Good morning, your honors, and may it please the court. My name is Paul Zedlicki, and I'm representing the American Fuel & Petrochemical Manufacturer plaintiffs in this case. I'd like to reserve four minutes for rebuttal, if I could. So this case is about the Oregon Clean Fuel Program, and it's a program that's designed to restructure the interstate market for transportation fuels in Oregon. And it does so by subsidizing in-state biofuels, and it does that at the expense of imported gasoline. Tell me how it subsidizes in-state biofuels. So the way it subsidizes in-state biofuels, as alleged in our complaint… Well, no, I've read your complaint, but you agree that the statute's facially neutral, do you not? Yes, your honor. We haven't challenged it. Okay. So what you're saying is that the statute, in effect, favors in-state biofuels over out-of-state fuels. Well, so it's quite… I… Yes, your honor. It's quite clear that the regulation, under the regulation, all gasoline, all diesel, they generate deficits. And deficits have to be erased with credits. No, and we've read the statute and understand how it works. My question is, I'm trying to find the germ of your argument. Your argument is that because some of these fuels are not produced in Oregon… All of the gasoline… Well, some fuels are produced in Oregon. Some fuels subject to the statute are produced in Oregon, are they not? Right. And all of them get benefits. They only get benefits. None of them get deficits. So this is what distinguishes this case from Rothschild. Well, as I read the regs, I thought there were some Oregon fuels that actually got fewer credits than some out-of-state fuels. Am I wrong about that? But they all get credits. They all get… Right. It's all an add-on. There are some out-of-state fuels that get even greater credits, correct? There are. But the focus here, the focus here is as to petroleum fuels, which are gas and diesel, all of them get deficits. So only a state, in your view, only a state that produces a fuel may regulate its use in the state. No, I don't think so. I think the good example here is Bacchus. So in Bacchus, the state of Hawaii can't give a benefit to pineapple wine when it's competing against entities from other states. No, but there there's actually an in-state product that it's giving a benefit to, correct? Right. But that was a benefit. And so what's happening here is the converse. Right. But your argument… And just bear with me for a second because this is what I need to understand. Your argument really turns on the absence of an in-state producing market in Oregon for the fuels produced by the people that you represent, correct? Well, I think… In other words, if Oregon produced these fuels and they were all subject to the same credits and deficits, you wouldn't have a concern. So what I'd say, Your Honor, is if Oregon produced petroleum fuels, then I think the Rocky Mountain analysis as to petroleum fuels would apply. Okay. So that means, and we're dancing around this, so I don't need to get to it. That means your argument is really based on the absence of production of those fuels inside the state of Oregon, correct? That's right. With regard to petroleum, that's right. And with regard to every other disadvantaged fuel, because when Oregon does produce a fuel, there's no evidence that its fuel is treated differently than a fuel from any other state. Well, the… No allegation. Taking a step back, the question is whether there is discrimination. And discrimination is differential treatment between in-state and out-of-state entities. And so the out-of-state entity that I'm focusing on here is petroleum. It's all deficits. Right. And the reason that there's discrimination, in your view, I take it, unless I'm wrong because I want to come back to this, is that because Oregon produces no petroleum, then the regulations which impact your clients who are out-of-state producers necessarily discriminate against your clients, correct? They necessarily discriminate under the program which says to our clients, you are going to generate deficits, and the way you get rid of those deficits is by buying credits from your competitors. And the competitors are in-states. But are we on the same wavelength here? If Oregon produced petroleum, which was subject to exactly the same regulation as your clients' petroleum, you would have no complaint, correct? We'd have… You'd be in California, Rocky Mountain. We'd be under Rocky Mountain, Your Honor. Okay. Fair enough. We've gotten to it. Now I've clarified it. Go on. But, again, I think the key sort of analog is the Backus case where a State — the facts on the ground in that case are that Hawaii regulates to benefit pineapple wine. Well, it doesn't say that it's just regulating in-State, but what it's doing is it is benefiting an in-State entity and, as a result, burdening the out-of-State entity. And that's why I asked the question, because in that case it was benefiting the in-State… Pineapple entity, correct? Yes. Yes, Your Honor. And hurting the out-of-State pineapple entity. And here what we… And in your case, there's no in-State benefit except… No, no, no, Your Honor. That's wrong. So tell me what the in-State benefit is. The reason there's an in-State benefit, and this is the reason that this is a subsidy, and this is a subsidy case, much like Wesleyan Creamery, is we have to get rid of our deficits. And the people we buy the deficits are those people who create credits. And the in-State fuel producers in Oregon, they all create credits. Do any out-of-State producers create credits? They do, but that's okay. But that doesn't change the fact that there's discrimination going on. Why can't you buy the credits from the out-of-State producers? You could, but that would be just — that wouldn't do away with the discrimination that's as between the in-State fuel producers with whom we compete. So we have a deficit and we have an additional cost. And so we're harmed whether — we're harmed as to the in-State — Do any in-State producers have deficits? I'm sorry? Do any in-State producers have deficits under this statute? No. No in-State producers have deficits. There's a diesel fuel — there's a biodiesel producer, just credits. There's an ethanol producer, just credits. So they create — they have credits and we have deficits. And that's why it's discriminatory is because this is a subsidy that the out-of-Stater has to pay to the in-Stater to prop up the in-Stater's business. And, in fact, this is all by design. This is by design. And the Governor said when this was being designed, what we want to do is, look, we want to build up our in-State industry. And how do we do that? Well, the reason we want to do that is because each year we're sending $6 billion out-of-State to buy out-of-State fuels. Let me change the emphasis. Under Rocky Mountain, we allowed the ethanol purpose-and-effect claims under the Commerce Clause to be remanded for further proceedings, right? That's true. But we didn't allow — we dismissed the purpose-and-effect claims for petroleum because they were on summary judgment, right? That's true as well. And there was no evidence. That's true. And if I could just take one step further, the distinction that we're drawing between what's going on in Oregon and what happened in Rocky Mountain with regard to crude is that the basis for the decision in Rocky Mountain as to California crude with regard to the purpose was, look, there's some in-State crude producers. There's some out-of-State crude producers. The in-Staters get burdened. The in-Staters get benefited. So it's a wash, or we can't see discrimination here. Oregon's different. I understand. So are your claims similar to the ethanol purpose-and-effect claims under the Commerce Clause, which we remanded for further proceedings? Well, certainly we think that the effect of this is it just follows from the design, which is this design that the credit producers, they get a benefit from the deficit producers. And we've been determined to be that. Is that what we were talking about, why we, if you will, remanded the ethanol purpose-and-effect claims under the Commerce Clause in Rocky Mountain? Isn't it the same theory? I think it is the same. It is a similar theory. It's this idea of discriminating against interstate commerce. It's discriminating against your competitors. And we have a purpose-and-effect argument. So, yes. I understand. Let me go one further, if you will. I'm going to interrupt Judge Hurwitz. If, in fact, we were to remand this claim, it seems to me what you're really suggesting is you want more discovery before we come to summary judgment. Isn't that what you're asking for? Well, I think a lot of the evidence is already out there. And the 28J letter that we submitted to the Court last week reflects the same structure. The out-of-staters, they get deficits. The in-staters, they get credits. And so this is out-and-out of subsidy. So I think — Are you saying you don't need any more evidence? I think we have a lot of evidence that we need, that we'd like to present. Oh, I see. But I'm still having difficulty on that point. So tell me, what is it that you would put before the district judge — That was going to be my question. — on purpose? I know what your effect argument is because you've now told me. What more would you put before the district judge than you already did on the purpose of the statute, not the effect? Well, this is assuming that the Court reverses and says that we do compete with one another and our fuels are substantially similar for purposes of the Commerce Clause. So if we've — That's not — I'm sorry. I must have asked the question wrong because you're answering a different one than the one I asked. The question I'm asking is, you argue in your brief that this statute is unconstitutional because its purpose was to favor in-State industries at the expense of out-of-State industries. I understand your argument that that's the effect of the statute, and that's perfectly — your argument, and that's perfectly clear to me. I want to understand what additional evidence you would place before the district court about the purpose, recognizing that our cases say that we treat the purpose stated in the statute as the purpose in the absence of some evidence that it's a sham. So what other — what would we remand about on purpose if we followed the ethanol example? Well, in our complaint, we've identified statements associated with the — Well, people said we're passing the statute because it's good for Oregon. I can't imagine a State legislator ever saying — I think they said more — — ever saying I'm passing the statute because it hurts Oregon. I think they said more than that, Your Honor. I think that they said we're looking to claw back some money that's — each year is going out when we — that we need to spend with regard to out-of-State — So let me be Justice Scalia for a moment. I can't aspire to it. Who always said, oh, that's garbage. Don't look at what legislators say. Just look at what the statute does. Why would we look at what people said on the floor of the Oregon Senate to determine the purpose of the statute? Well, just to be fair, I think that — I think that the purpose of this regulation — there are multiple purposes here. Certainly my colleagues on the other side are going to say this is a purely environmental purpose. But I think if you look at the regulation, it's got multiple purposes. And one of those purposes — But my question is don't they appear from the face of the — however good your argument is, don't they appear from the face of the regulation? Do we really need evidence about what the purpose is? I think that we do have evidence, but I do agree that the focus of this is going to be on the regulation. And most of the case — most of the cases look to the regulation and say, hey, is this unrelated to economic protectionism? And I think if you look at this regulation in total, you can't say it's unrelated to economic protectionism. The way it was promoted was this is great for our economy. Nobody's going to be — going to get hurt. It's all upside. And so I don't think — you know, I think all of that — I'm not sure whether that is — whether that's new evidence. It seems like those are materials that we've already identified. Yes. I'm just — because I'm trying to understand if we remanded, what the district judge would do that she hasn't already done that you think she did incorrectly with respect to this issue. And what I think she did incorrectly is she viewed this as there being a solitary purpose to a statute. And I don't think that's wrong, and I think that that doesn't reflect the case law on this. The case law on this talks about the fact that statutes have multiple purposes, and when they're being defended, you have States come in and say we have this purpose, this purpose, and this purpose. I think that this statute has an economic purpose as well as any environmental purpose that they advocate. So this is helpful, so let me ask you this question because it was the next one on my list here. Let's assume a statute can be read as having multiple purposes. I want to protect the environment. I want to encourage in-State industry, et cetera, et cetera, et cetera. Does the fact that it has multiple purposes make it unconstitutional, or does the unconstitutional purpose have to be the primary one? Well, I think the case law, and the example is Oregon Waste v. Oregon DEQ, is that the whatever purpose is identified has to be unrelated to economic protectionism. And so there is a component of economic protectionism that I think it does satisfy — it does get subject to strict scrutiny. And so another way of looking at this is that— Wow. We're up to strict scrutiny on Commerce Clause cases? Yes, Your Honor, for a discriminatory statute. For a statute that's facially discriminatory? No, more than that. For a statute that's— For its purpose? We have to strictly scrutinize the purpose of the Oregon statute in order to determine whether or not its real motive was not environmental protection, but helping in-State industry? I don't think we're saying the same. I don't think— I'm sure we're not, because that can't be true. No. What I'm trying to say is that — and the best case I have for this is Philadelphia v. New Jersey. And Philadelphia v. New Jersey is a case about waste. And in that case, New Jersey shut off any waste coming in from Philadelphia. And the Court said, look, we accept that you have an environmental purpose for this, but this — but the Commerce Clause addresses not only the environmental purpose, not only the ends, but the means. And that's what's going on here. If they can identify an environmental purpose, that's not enough. They can't try to address that environmental purpose in a discriminatory  And that's what we have in this case. All the out-Staters, they get deficits. All the in-Staters, they get benefits. What if Oregon placed a tax on the sale of petroleum products larger than the tax it placed on the sale of so-called clean fuel? Would that violate the Constitution? I think under these circumstances, where all the petroleum is from out-of-State, and all of the — and the biofuels are in-State competitors, I think there's going to be a differential there, and it would be no different than what happened in Bacchus. It would be no different. What happened there was there was a differential taxation system. There was someone — But there was a differential taxation system, as I understand it, on the same product. No. It wasn't on the same product. It was on — it was on pineapple wine that competed against other liquors. It was against wine. It was against liquor. But under Rocky Mountain, it's quite clear that for purposes of the Commerce Clause, substantial similarity. It turns on whether the two compete against one another in the same market. Ethanol competes with gasoline. Biodiesel competes with diesel. They are in the same market. That's controlling precedent from Rocky Mountain itself. So your view is that under Rocky Mountain, we would have to hold on — Yeah. Assume the California system for a moment. Take us out of Oregon. California imposed a tax on petroleum products, which was higher than the tax it imposed on ethanol. You said that would be unconstitutional in California? I think that would be a harder case because of what happened in Rocky Mountain, where you have in-state interests. And, in fact, that's what Rocky Mountain relied upon. It said the fact that you are burdening an in-state interest, that is strong evidence that you're not trying to discriminate because you have that internal check on the decision-making. Your Honor, I have three minutes. I think you've gone past your four, but you're down to 258. We'll hear from the — Thank you. — O'Keefe. May it please the Court. Denise Fjordbeck on behalf of the Environmental Quality Commissioners of the State of Oregon and their staff. With me today is Elaine Meckenstock, who represents the intervener, the California Air Resources Board. And with the Court's permission, I'd like to reserve seven minutes of my time for her. And I realize that I need to track that. You can do that yourself. I guess you can let her do — I'm just going to tell you that when you get people on the stand, like Judge Hurwitz and myself, sometimes that reserving the time is impossible, and we're not going to do it for you. I observed that this morning. Yeah. And we're not going to do it for you, so you're going to have to do it yourself. And therefore, I just want to warn you in advance, we don't — sometimes I've seen it happen. It won't with me, but I've seen it happen where the chief judge, where you use it all, and the chief judge says, well, they don't got any time left. Sorry, we don't hear from them. So I'm just putting you on notice. I appreciate that, Your Honor. Why don't we take up where counsel was? Because I think that's the important question that we have in front of us. Let me make sure I have this right. It seems to me that we're here on a motion to dismiss. Correct. So on a motion to dismiss, I have to take the allegations that the complaint is true, right? True in part. To the extent that the allegations are legal conclusions, you do not have to accept those legal conclusions. Well, let's go on a little further. I have to give them every intendment of those facts, don't I? I suppose that's true. Okay, so. So you read them in the light most favorable to the extent that they are factual allegations, yes. All right. And if I look at Rocky Mountain, that was on summary judgment, right? Correct. So we're in a little bit different procedural posture in this case. That would be correct, yes. So if I look at the allegations in the complaint, and this is why I think this is important, the allegations say that Oregon program imposes no burden on interstate fuel market participants. The law is designed to benefit the in-state market participants by awarding them credits that they may thereafter sell to out-of-state petroleum and ethanol companies. That Oregon has no petroleum industry, its law props up the local green fuel industry at the expense of the wider fuel market, including out-of-state petroleum and ethanol companies. Those are the allegations. So it seems to me, giving them now on, if you will, a motion to dismiss, the complaint alleges a baucus situation, where the state supports the unique local industry of green fuel producers at the expense of others. Why doesn't it? It doesn't because the complaint refers to a specific regulatory regime, in effect incorporating that regulatory regime into the complaint, and what that regime actually does. What does that mean? I mean, I'm supposed to take these allegations as true, and I didn't think that any of them were a statement of law or a statement of a final, but they were just allegations. And then I said, well, let me read baucus and see if it's the same situation. Seems to me it is. Oregon is, if you will, supporting local industry of green fuel producers at the expense of the others, who have to buy all these credits from the in-state people. And so there at that point, I'm saying to myself, on a motion to dismiss, shouldn't I at least give them a chance to go get some discovery together? And I certainly have had that discussion with the trial division at the Department of Justice. I would rather this was on a motion for summary judgment. Well, I would, too, because then I would have more evidence to look at. Now all I have to do, whatever he says, as long as it's in the complaint, I have to accept as true. I'm not anxious to do that, but the law requires me to do it. I don't believe you have to accept a legal conclusion. There's nothing legal conclusion about what I just read to you. So let's assume everything Judge Smith told you is a fact, that as a matter of fact, and I don't think it's disputed, by the way. I don't think it's disputed that the effect of this statute is to require at least his petroleum clients to buy credits and that there aren't any in-state petroleum producers in Oregon who have to buy credits, and therefore that results. So let's assume all these facts are true. Does the complaint state a claim? And if not, why not? Because the complaint, in effect, incorporates the regulatory regime that it challenges. Sure. We have the regulations and the statute, and we can look at them. So tell me why, if it does, the facts that Judge Smith just read to you don't state a claim for discrimination. In essence, because the regulations are, in effect, incorporated by the regulators. But the regulation does. I understand that. They're incorporated. I'm way past that. You've got me. They're incorporated. Tell me, now that they're incorporated, why this complaint, let's assume that the complaint just said and said, here's all the regulations, and then said all the stuff Judge Smith said. Tell me why that complaint wouldn't state a claim for discrimination. What the regulation does is it does require gasoline and diesel suppliers who sell in the state of Oregon to buy credits. They are not required to buy credits from Oregon producers. And, in fact, many of the lowest carbon intensities are produced by out-of-state Midwest ethanol. They can choose to offset. I can understand what you're going to argue. And maybe even I'm anticipating your argument. But, nonetheless, the credits are bought from Oregon. They're being bought from Oregon. Oregon is receiving all the benefit of this law. There is nothing in Oregon which gets any negative. There's no in-state industry that is negatively impacted or burdened by this law. And that means, is this legislative abuse, or is this just a powerful safeguard? And all I'm saying is, here we are on motion to dismiss, where all they're asking for is the right to go out and discover if they're right or they're wrong. And given Baucus, I'm trying to figure out why I wouldn't allow it. And also given Rocky Mountain. I mean, in Rocky Mountain, we did the same thing. We said the ethanol purpose and effect claims under the Commerce Clause ought to be remanded for further proceedings for the same kind of argument. The only reason I cut off the, and I didn't do it, but the petroleum claims, is because it was on summary judgment and there was no evidence left, and we said, done. All I'm asking you is, why not give that guy that opportunity? I would suggest, for this reason, that we are, in the Oregon Clean Fuels Program, which is effectively incorporated, we are much further along than California was at the time that its program was challenged. But assume, and we keep fighting about incorporation, and I'm with you on incorporation. Let's assume that the facts allege, and by the way, I think the facts allege are probably true, and they're plausible, I think they're probably undeniable, that his clients have got to buy credits in order to do business in Oregon, but that Oregon producers of fuels that exist now don't have to buy credits in order to do business in Oregon. Assume those facts to be true. That's true. Does that make out a Commerce Clause violation? No. If it does not, tell me why not. Because the distinctions are based on science, based on the carbon intensity, and based on the purpose of the statute and the rule, which is over a 10-year period to reduce the carbon intensity and hence the greenhouse gas output. So your argument is that the discriminatory effect, in reality, of this regulation doesn't make it unconstitutional because its purpose is to conduct environmental regulation. Well, not only its purpose, but also its effect, because what it does is to incentivize. I assume it does what it was meant to do. They don't contest that. It makes it more difficult to sell polluting fuels in the State of Oregon without encouraging people to produce non-polluting fuels. And I'm not suggesting your position is wrong. I just want to understand what it is. Your position is that given the fact that this was a statute designed for environmental protection and given the fact that it's facially neutral, the fact that he alleges and that we take as true that in reality it means that out-of-State petroleum producers will have to buy credits from in-State ethanol producers and other producers doesn't make it unconstitutional. In-State and out-of-State ethanol producers. Okay. That's your position, right? That is our position, yes. Let me ask you another question. What do we do with these statement after statement by the legislators and the governor and the administrative agency which consistently doubts not the environmental protection of this law, but the way to encourage the development of the Oregon green fuel industry? Well, I think that those and the prior case law has said... To me, that makes it pretty tough. If you consider those statements in a vacuum, perhaps it does. If you consider it in the context of Oregon going all the way back 30 years now, adopting a number of statutes, a number of studies, a number of ways of reducing greenhouse gases for the purpose of reducing greenhouse gases and our contribution to that and look at the statutory purpose as stated, which is to reduce the carbon intensity of fuel, the rules as adopted which actually do that. I'm sorry. I think in my experience... Yes. Your point is that the governor and the others are touting the development of non-petroleum alternatives which will produce the environmental effect of fewer or less greenhouse gases. And therefore, their statements are simply a way of saying, we want to get lower fuels with lower greenhouse gas emissions. So they are not only economic, they're related to the very purpose for which the legislation has been designed. Well, yes, Your Honor. I think that's fair. I think that they are, in effect, both. You will not find any state legislator saying, I want to adopt an environmental law that's going to absolutely hurt and crush our economy. There are always statements, I would submit, that not only is this good for the environment, but it will be good for Oregon for a number of reasons. With respect to... I guess I started into this because I didn't really get to my last question. It seems to me that these statements were, if you will, categorized by the district court as out of context, not really the way it ought to be, not the way it was, trying to take the same approach you're giving. And again, we're on a motion to dismiss. I don't know what business the district court had to categorize any of these statements. On a motion to dismiss, I've got these statements as allegations in the complaint, which I'm to take as true. I'm not supposed to find out all the reasons they're wrong or all the reasons why they wouldn't be something which would support the issue. I'm to take them as true and to determine whether I can, on a motion to dismiss, dismiss the case. And yet you want to categorize them, or you want to dispute them, or you want to say all these things about how they don't mean anything. But again, we're not at trial. We're on a motion to dismiss, alleged by your opposition. And I have to give them the credit to which they're due. Well, and my memory is, and Ms. Meckenstock may be able to help me remember this, my memory is that the statements were actually appended to some of the materials at trial. And so the- Well, they're in the allegations as well. They're part of the complaint here. They're allegations 72 through 84. So let's assume that a bunch of Oregon legislators and the governor said, one of the things we're trying to do here is develop an in-State industry. Okay? Let's assume they said that. Does that make the statute unconstitutional? Only if it discriminates on the basis, again, similarly situated- So I take it this was the argument in your brief, and that's why I'm surprised that I don't hear it today. The argument in your brief was that none of these statements show a discriminatory purpose but rather show the desire of the State legislators to help develop industry in the State and that the statute doesn't have a discriminatory effect. That is your argument, isn't it? Well, I- Maybe the reason she didn't make that argument is, again, she's doing the same thing the district court did. Yeah, I know, but- She's categorizing the statements rather than giving the indentment of the complaint. I guess my point is we take the statements as true. Nobody's arguing that the statements weren't made. No. The question is whether they're sufficient to plead a case of discrimination. That's what we have to decide, right? Correct, correct. And I think that Judge Smith's questions assume a discriminatory purpose. What I'm doing is I'm trying to give them the benefit of being a motion to dismiss and give them every intent of what that means. I'm not trying to say they're true. In fact, that's why I just keep saying, why don't you guys let us go on, have a motion for summary judgment, get the evidence out there, or even a trial, whatever it's going to take so that we can get through this. Why stop it now when every part of the complaint would suggest this is a back situation? Because, Your Honor, of the case law that says that you look to the statute and the regulations themselves to determine what the purpose is. And those regulations say that purpose is to reduce carbon intensity, and then the regulations fall from that, and that's what they actually do. That's the purpose, and that's the effect. Thank you. And I'd like to cede the rest of my time to my colleague. Thank you very much for your argument. Good morning, Your Honors. May it please the Court, Elaine Meckenstock for Intervenor California Air Resources Board. I know I don't have a lot of time, so I'd like to try to make four points, and I'll try to do so as quickly as possible. First, in response to the question about remanding and how this could be decided on a motion to dismiss, I think it's worth noting that on a motion to dismiss, this Court and the district court can consider material subject to judicial notice, and all of the evidence on the purpose claim in Rocky Mountain was also submitted on judicial notice. But just a minute. Don't go too far, because on the same kind of claim, on the same kind of problem, all of the ethanol purpose and effect claims under the Commerce Clause were remanded because it was only a motion to dismiss. And that was in Rocky Mountain. Because it was purpose and effect claims for petroleum and on summary judgment and no more evidence to be taken, we didn't do anything. We let it be dismissed. Well, one point of clarification that I think is important, Your Honor, is that Rocky Mountain was up on partial summary judgment. I know. And that the district court had not considered the ethanol purpose and effects claims, which is why they were remanded to the lower court. We didn't say they couldn't be decided as a matter of law. We just said they hadn't been decided. That's correct, Your Honor. And so they weren't part of the certified judgment that was before this court. We're obviously in a different situation here. And the evidence that is before this court and was before the district court is identical. In other words, what is before this court are the statements that various people made in all of the documents, which this court can take judicial notice of, and the district court did. Well, we don't even have to take judicial notice of them. They're appended to the complaint. That's correct. In most cases, that's correct, Your Honor. So I asked you the same question I asked your colleague. Assuming those statements were all made, which we have to do, are they sufficient to demonstrate unconstitutionally discriminatory purpose? No, they aren't. Why not? Because what they show, and as my colleague mentioned, there's a long history of Oregon addressing this particular problem, and transportation emissions are a huge contributor to greenhouse gas emissions. So the context suggests that the environmental purpose is the real one. And those statements are simply statements from legislatures hoping that some of the innovation that this regulation is designed to drive will occur in the state of Oregon. And that is not a discriminatory purpose. But just a minute. If I take those in consideration of the other allegations in the complaint, you've missed the other allegations in the complaint. These statements aren't there by themselves. They're there because of the other allegations, which are also in the complaint, which have nothing to do with how you can categorize them, as the district court tried to do, or how you might categorize them. It only has to do with do they support the allegations of the complaint and giving every intendment to those, which are Oregon imposes no burden on in-state fuel, the law is designed to benefit the in-state market participants, Oregon has no petroleum industry. Yes, Your Honor. And those facts are actually not like the facts in Baucus. They're actually like the facts in Exxon v. Maryland, in which Maryland imposed a significant burden on refiners, who all happened to be outside the state of Maryland, but left the retail gasoline market available for in-state and out-of-state independent dealers to compete in that retail gasoline market. So they excluded the out-of-state refiners from that market, but left the market free for competition from in-state and out-of-state independent dealers. This is exactly the same, where, as Judge Hurwitz noted and is in the record, there are all of these out-of-state fuels that have carbon intensities lower than Oregon. And also, unlike Baucus, so that's one important distinction from Baucus, is that in Baucus all of the benefits were focused on the in-state products, and that is simply not true here and can be determined even on a motion to dismiss. Have you got another minute's worth? Yeah, I did want to. I'm going to help you. I appreciate it. Thank you, Your Honor. I did want to mention the threshold question, which we haven't spent a ton of time talking about today, but we did argue and the district court did find that petroleum and biofuels are not substantially similar. And if you look in Tracy. Can the district court find that on a motion to dismiss? Well, the district court found — I misstated. The district court didn't find they were not substantially similar. The district court found that the allegations did not support that conclusion. And that is a correct determination by the district court. Could they fix that? If they could allege facts that would support that there is a single market in which petroleum fuels and biofuels compete, then, yes, they could fix it. They haven't offered any allegations that would, and I would say that would be — So help me focus on this. Your argument is that they haven't sufficiently alleged that they compete or that they haven't provided any evidence that they compete? That they haven't sufficiently alleged that they compete. If you look at how courts approach this question, what the court looks at when defining the relevant market is who are the consumers and what need are they trying to fill in the market. And you can see this in Tracy at 519 U.S. 301. Can we do all that on a motion to dismiss? No, but they need to allege that there are consumers who go out into a market and choose between biofuels and petroleum based on price and other factors. But it seems to me that if we're dealing with this in the traditional motion to dismiss standards, I couldn't say to myself it would be impossible for them to so allege, could I? I don't think so. But they haven't alleged it, which is my point. Did the judge offer them the opportunity to amend to so allege? They didn't ask for it. I don't know whether — I know they didn't ask for it. That part I knew. I was asking the question about the part I didn't know the answer to. I don't believe that she did, but I could be wrong about that. Okay. So let's assume that your colleague gets up today and says, oh, I could allege that. Should we then allow him to go back and amend the complaint? I think that that would be an option available to this Court. If they could — if he thinks that he can allege, I think that's difficult for them, because if you look at the statements that his client has made to the U.S. EPA, which in our supplemental excerpts of record, they allege — they argue the opposite. But now we're at the Judge Smith's summary judgment land. I'm trying to just figure out — we're dealing with the motion of the — the face of the complaint. I understand. But you can take judicial notice of those materials, Your Honor. Thank you. Thank you very much for the extra time. All right. Counselor? I don't know where we left you. We left you a little bit of time because you wanted to sit down. Thank you, Your Honor. So I guess I'll start where Ms. Meckenstock ended. We did allege that they compete with one another. Paragraph 58 says the Argonne program is designed to displace imported fuels produced from petroleum sources. That's really different than arguing they compete with each other, isn't it? No. That's an allegation that the Argonne program means to say to people, stop using petroleum. No, it's displacing. It's — we're not going to be using this as much. We're going to be using something different. Well, that's what you just said, but the allegation doesn't say that. Well, the allegations that follow thereafter. I can look at them. I don't want you to use up all your time. Yeah, I mean, paragraph 57, 58, and — I mean, the whole purpose of this program was to say we want to — we want to bolster in-state biofuels in a couple of ways. One is what we want our competitors to pay for it through — by having to buy credits. And the other is we want to displace them. And, in fact, you know, that's what's been happening. And we reflect — in the 28-J letter that we sent, we highlight it. And, again, Ms. Meckenstock points to a Second Circuit case. I'll point to the Ninth Circuit case in Rocky Mountain. Entities are similarly situated for constitutional purposes if their products compete against each other in a single market. The regulation identifies gasoline and gasoline substitutes. It identifies bio — it identifies diesel and diesel substitutes. These products compete against one another. And that makes sense to me. But I just — I'm having trouble finding that allegation in those terms in your complaint. I — your argument is that that's the effect of the various allegations. Absolutely. And, again, it's on a motion to dismiss. So this is taken, you know, with all the inferences in our favor. And, of course, you know, given the opportunity they wanted more than we already provided, we could provide it. But I think what we provided is sufficient, certainly sufficient, under Rocky Mountain. The only — I'd like to just briefly — Can I go — I'm not sure, Judge Smith, I'll let you finish. But I want to make sure I understand the question I asked you at the beginning. Let's assume Oregon had a single in-state petroleum producer. Well, I think it would be — No, let me finish the question. Oh, I'm sorry. Okay. Who knows what the answer would be. If they did, would you have a claim? With regard to the — we have other claims, which I haven't discussed already. Right. And I'm only focusing on these because — But it would be harder — it would be harder — and it would depend upon how you read Rocky Mountain. Because in Rocky Mountain, there was a substantial, substantial in-state producer that was burdened. Substantial. If they had a single — you know, if it was a de minimis kind of producer, I think we would still be able to make that kind of claim. That shouldn't affect the analysis. But here, it's quite clear, there are no in-state petroleum. There is no in-state diesel. There's no in-state gasoline. Just for one second, on the second issue that I hadn't discussed, if — I see my time. Your time has run, but we gave them an extra minute. Okay. So the one — the one issue in Rocky Mountain, this Court decided the question about extraterritoriality under the Commerce Clause. It did not decide that issue under the Federal structure of the Constitution. Thank you. I don't want to spend a lot of time, but tell me what provision of the Constitution Well, it's in the structure. I understand. But again, if I'm going to channel Justice Scalia, let me — what part of the Constitution do you rely other than the whole thing? Tell me what clause in the Constitution this argument relies on other than the Commerce Clause. Well, what I'll do is, you know, we — I guess the answer I'll give you is I'll point to the cases. In the cases, the best one that provides this example is BMW v. Gore. And it says that the Constitution has principles of sovereignty and comedy. And in that case, the Court said that an Alabama — Alabama could not punish BMW's conduct outside of Alabama in an effort to deter that conduct outside of Alabama. Now, that wasn't based on the Commerce Clause. It was based upon sovereignty and structure. And that's the idea. The Commerce Clause itself is based upon unit — Right. But in BMW v. Gore, what we said was a State couldn't punish conduct that occurred, what the Court said, outside the State under the 14th Amendment. That's right. Here, isn't the — isn't the conduct that's being regulated conduct inside the State, which is, say, selling of your product? There is a — there is a contact within State. But the point on — And in BMW v. Gore, there was none at all? No, there was a contact in State. There was a — somebody was injured in Alabama. Right. The question was whether they could be additionally burdened. The question here is whether you can be — whether you could — whether Oregon could, you know, regulate and deter conduct outside of it. I understand the argument. Thank you. Thank you, Your Honor. Unless you have other — No, no. I didn't understand the argument. Now I understand it better. Thank you. Thank you, Your Honor. Do you have anything further you'd like to ask Judge Fischer? No, thank you. Very interesting. Thank you. Thank you very much. Thank you both for your very good arguments. We appreciate them both. Tough case, really. And I appreciate it. We appreciate all of you being here. And now this case 1535834 is submitted and court is adjourned until tomorrow. Thank you very much.
judges: Fisher, N.R. Smith, Hurwitz